UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRACY C. WHITTY,

     Plaintiff,

v.                                                        CASE No.  8:10-CV-2723-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

O R D E R

     The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.[1]    Because the decision of the Commissioner of Social

Security is supported by substantial evidence and does not contain any

reversible error. the decision will be affirmed.

I.

     The plaintiff, who was forty-four years old at the time of the

administrative hearing and who has an eighth grade education, has worked at

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 12).

various jobs, including as a cashier (Tr. 30-32, 35). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to rheumatoid and osteoarthritis (Tr. 342). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative joint disease and obesity (Tr. 92). The law judge concluded that these impairments imposed the following restrictions (Tr. 94):

> [T]he claimant has the residual functional capacity to perform a reduced range of sedentary work. Specifically, she could lift/carry 10 pounds occasionally, less than 10 pounds frequently; she could sit 6 hours out of an 8 hour workday and stand/walk a total of 2 hours out of an 8 hour workday with a sit/stand option at will. Likewise, she would have limitations in her ability to push/pull when she is symptomatic. She would be limited to no climbing ladders, ropes, or scaffolds and only be able to occasionally climb ramps and stairs. Additionally, she would have limitations in her ability to kneel, crouch, stoop or crawl because of her obesity. Due to pain in her shoulders she would have limitations (could not do often) in her ability to reach overhead. Furthermore, she would

> need to avoid all exposure to extreme heat, cold
> and hazards (i.e. moving machinery, unprotected
> heights). Lastly, she would have some limitations
> in fine manipulation and occasional limitation in
> gross manipulation.

The law judge found that, with these limitations, the plaintiff could not return to any past relevant work (Tr. 98). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that she could perform, such as cashier, assembler, and information clerk/surveillance monitor (Tr. 99). Consequently, the plaintiff was found to be not disabled (id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the

terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The plaintiff must also show that she became disabled before her insured status expired on December 31, 2007, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."

Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520, 416.920. The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled. 20 C.F.R. 404.1520(b), 416.920(b). If not, the next inquiry (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If there is not a severe impairment, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and

work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P. Appendix 2.

## III.

The law judge found that the plaintiff has a substantially restricted functional capacity, as he limited her to only a reduced range of sedentary work. Based upon the testimony of a vocational expert, who stated that there are jobs in the national economy that the plaintiff could perform notwithstanding her limitations, the law judge found the plaintiff was not disabled. The plaintiff challenges the law judge's decision on three grounds. None of the arguments warrants a reversal.

A. The plaintiff argues that the law judge should have found that her fibromyalgia, rheumatoid arthritis, and carpal tunnel syndrome are severe impairments (Doc. 15, pp. 14-18). The contention presupposes that the plaintiff suffers from these impairments, and that the law judge concluded that she did not have significant limitations from these conditions (see id., pp. 14-15, 17; 20 C.F.R. 404.1521(a), 416.921(a) (a nonsevere impairment is one that "does not significantly limit [the claimant's] physical or mental ability to

do basic work activities")). However, as the record and the law judge's decision reflects, the evidence is conflicting or indefinite as to the ailments underlying the plaintiff's physical problems. Consequently, the law judge more generally identified the plaintiff as having the severe impairment of degenerative joint disease, and considered the plaintiff's symptoms accordingly.

As the law judge discusses in his decision, Dr. Eugene Bloom, who testified at the hearing and whose opinions the law judge gave significant weight, stated that there is conflicting evidence regarding whether the plaintiff has rheumatoid arthritis, and he merely said she "probably" has fibromyalgia (Tr. 44, 93, 94). Further, the record does not even contain a diagnosis of carpal tunnel syndrome (Tr. 566)(symptoms "consistent with" carpal tunnel syndrome). Therefore, this is not a circumstance where the law judge found that the plaintiff had these impairments, but found them non-severe because they did not impact her ability to work. Further, the plaintiff's citations to evidence which "point[s] to," or is "consistent with" these ailments (Doc. 15, pp. 16-18), does not compel the law judge to conclude that she has these impairments. See Adefemi v. Ashcroft, supra.

Regardless, the plaintiff cannot prevail on this issue simply by showing that the law judge should have characterized fibromyalgia, rheumatoid arthritis, and carpal tunnel syndrome as severe impairments. The Eleventh Circuit has held that "step [two] acts as a filter; ... the finding of any severe impairment ... is enough to satisfy the requirement of step two." Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987). Because the law judge found that the plaintiff has severe impairments of degenerative joint disease and obesity, he did not stop prematurely at step two, but proceeded on to the following steps in the sequential analysis. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987); Perry v. Astrue, 280 Fed. Appx. 887, 894 (11th Cir. 2008).

Therefore, in order to demonstrate reversible error based upon a failure to identify all of her severe impairments, the plaintiff must show that she had functional limitations from those conditions that were not included in the law judge's determination of the plaintiff's residual functional capacity. See McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)(it is the functional limitations from an impairment, and not the diagnosis of an impairment, that is determinative in an evaluation of disability).

The law judge concluded that the plaintiff could perform only a restricted range of sedentary work, based on symptoms the plaintiff attributes to fibromyalgia, rheumatoid arthritis, and carpal tunnel syndrome (see Tr. 94-96). Except for an allegation that the law judge should have found greater fine manipulation limitations (which, as discussed below, is meritless), the plaintiff has not made any cogent argument that she was more functionally limited than found in the residual functional capacity (see Doc. 10, p. 2)(scheduling Order provides that an argument must be supported by citations to the record of the pertinent facts and governing legal standards). Consequently, the plaintiff has failed to demonstrate that the law judge committed reversible error in the identification and classification of her impairments.

B. The plaintiff also argues that the law judge failed to establish that there is other work in the national economy that she could perform (Doc. 15, pp. 21-28). The vocational expert testified that the jobs of cashier, assembler, and information clerk/surveillance monitor could be performed by someone with the plaintiff's age, education, and residual functional capacity (Tr. 56-58). Based upon this testimony, the law judge concluded that the plaintiff was not disabled (Tr. 99).

The plaintiff argues that this testimony does not constitute substantial evidence to support a finding that she is disabled because (1) the pertinent "hypothetical question failed to comprehensively describe" her fine manipulation limitations which render her unable to perform the jobs of cashier and assembler, and (2) she cannot perform the job of information clerk/surveillance monitor because it is semi-skilled work, and she can only do unskilled work (Doc. 15, pp. 21-28).

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002). On the other hand, the law judge is not required to include in the hypothetical question allegations that have been properly rejected. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The pertinent hypothetical question posed to the vocational expert matches the residual functional capacity found by the law judge (Tr. 55-56, 94). Consequently, the hypothetical question is not flawed.

The contention that the hypothetical question did not comprehensively describe the plaintiff's fine manipulation limitations is

essentially a challenge to the adequacy of the law judge's determination of the plaintiff's residual functional capacity. Corbitt v. Astrue, 2008 WL 1776574 at *3 (M.D. Fla. 2008). This overlaps with the plaintiff's second argument that the law judge's determination of her fine manipulation limitation was too vague and not restrictive enough (Doc. 15, p. 18). Consequently, these contentions will be addressed together.

The law judge found that the plaintiff has "some limitations in fine manipulation" (Tr. 94). This finding was based on Dr. Bloom's opinion that as to "[f]ine manipulation she might have some limited manipulation" (Tr. 48). The law judge's finding of some limitations in fine manipulation is supported not only by Dr. Bloom's opinion, but also by other evidence in the record (see Tr. 531-534, 551, 559). In fact, there is record evidence that would support a finding of no fine manipulation limitations (see Tr. 551, 556-59).

The plaintiff argues that "some limitations in fine manipulation" is too vague to assess her work functioning (Doc. 15, p. 18). Rather, she contends that the law judge should have accepted the opinion of Dr. Ronald Kline, a nonexamining reviewer who opined that the plaintiff was limited to "frequent" fine manipulation activities, which means up to 2/3 of the day (id.,

-12-

pp. 18-21). The plaintiff contends that the law judge rejected this evidence without explanation.

Significantly, the vocational expert, in responding to the hypothetical question, did not express any uncertainty about the meaning of "some limitations in fine manipulation." Therefore, the restriction was adequately formulated and expressed to the expert. Further, plaintiff's counsel did not express any uncertainty about that limitation at the hearing, either. He could have sought to obtain more specificity about the limitation by questions to Dr. Bloom and the vocational expert, but he did not do so.

Moreover, it is apparent that the vocational expert interpreted "some limitations in fine manipulation" to mean no greater than a "frequent" limitation because the jobs the vocational expert opined the plaintiff could do require only frequent fingering. See DICOT 211.462-101, 1991 WL 671840; DICOT 559.687-014, 1991 WL 683782. Therefore, any purported error in failing to accept Dr. Kline's assessment, or any alleged vagueness in the description of the fine manipulation limitation, is harmless because the vocational expert identified jobs consistent with Dr. Kline's opinion and, concomitantly, the limitation advocated by the plaintiff in her memorandum (see Doc. 15, pp. 18, 21).

Additionally, to the extent that the law judge's determination of the plaintiff's fine manipulation limitation is inconsistent with Dr. Kline's opinion, the law judge indicated that he gave greater weight to the opinion of Dr. Bloom because Dr. Bloom's testimony, which was given after "a complete review of all medical evidence," was "consistent with the objective medical evidence of record as a whole" (see Tr. 92, 94, 97).[2]  In contrast, Dr. Kline's assessment was given early in the administrative processing without the benefit of the complete medical record, including a February 2007 consultative examination by Dr. Ladapo Shyngle, who found that the plaintiff's "[h]and and finger dexterity are intact [and her] [g]rip strength is 5/5 bilaterally," and bilateral x-rays of the plaintiff's hands, which were normal (Tr. 551, 577-78).  Significantly, another nonexamining reviewer, Dr. Marshall Kessler, who had the benefit of Dr. Shyngle's report, opined that the plaintiff had no limitations in fine manipulation (Tr. 559).  It is also

---

[2]Since the law judge in this case did specify a fine manipulation limitation, and explained why he gave greater weight to Dr. Bloom's opinions, the caselaw cited by the plaintiff in this regard is inapposite.  See, e.g., Spivey v. Apfel, 133 F. Supp.2d 1292 (M.D. Fla. 2001)(failure to address physician's conclusions); Milanes v. Astrue, 2008 WL 1766937 (M.D. Fla. 2008)(law judge failed to consider whether the claimant was restricted in capacity for fine manipulation); Dunaway v. Astrue, 2008 WL 1897603 at *7 (M.D. Fla. 2008); Mand v. Apfel, 2001 WL 267457 at *6 (M.D. Fla. 2001)(law judge failed to specify functional limitations resulting from an impairment).

noteworthy that Dr. Kline opined that the plaintiff could perform light work (Tr. 540), while the law judge found that the plaintiff was restricted to sedentary work. In short, Dr. Kline's assessment did not deserve any meaningful probative weight.

The plaintiff also argued that the law judge failed to explain why he rejected Dr. Kenneth Crager's recommendation that she wear wrist splints or supports for her hands (Doc. 15, pp. 20-21). That suggestion was implicitly rejected by the law judge's finding that the record does not warrant greater limitations than found in the residual functional capacity. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)(there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision).

Further, it was proper to discount this opinion, as Dr. Crager does not identify any specific functional limitations necessitating hand supports. A recommendation to try hand supports does not translate into a functional limitation regarding fine manipulation.

Also, Dr. Crager did not opine that the plaintiff needs hand supports on a permanent basis. Thus, none of Dr. Crager's other progress notes, including the plaintiff's follow-up visit to Dr. Crager in September 2008, mention use of a wrist splint or hand support (Tr. 564-65, Ex. B10F).

Consequently, the plaintiff failed to show that the law judge erred in disregarding the single notation of wrist splints and hand supports.

The plaintiff also states that her own testimony supports the contention that she has a greater fine manipulation limitation than found by the law judge. The plaintiff testified at the hearing that she has "a hard time picking up" coins, and that her hands "go to cramping [and] paining real bad" (Doc. 15, p. 24; see Tr. 59-60).[3] The vocational expert stated that, in his experience, a person with hand cramping as the plaintiff described could perform the job of cashier only one to two hours per day, and it could affect her ability to do the assembler job (Tr. 60-61).

The vocational expert's opinion on this point is irrelevant because it is premised upon the plaintiff's testimony, which was rejected by the law judge (Tr. 99). Thus, the law judge discounted the plaintiff's testimony to the extent that it was inconsistent with the residual functional capacity assessment (Tr. 96), noting that allegations of functional disability have "no clinical or treating source support" and that no "treating or

---

[3]Significantly, the plaintiff asserts that her "testimony regarding [her] specific limitations [in] handling money is consistent with" Dr. Kline's opinion that her "ability for fine manipulation was limited to 2/3 of the day" (Doc. 15, p. 24). Accepting this argument, the plaintiff, by her own admission, is able to perform the jobs identified by the vocational expert.

-16-

examining physician has assessed the claimant with limitations that would prevent her from working on a full time basis" (Tr. 97). Accordingly, the law judge discounted the plaintiff's testimony that she had a hard time picking up coins and accepted her contrary testimony given earlier during the same hearing that she could handle money (Tr. 98; see Tr. 56).

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986). The law judge recognized the need to apply the standard and cited Landry (Tr. 94-95). The law judge also discussed the plaintiff's complaints of pain and limitations, and accepted them to a great extent. Thus, as the law judge noted, he gave the plaintiff the benefit of the doubt in finding that she can perform only a restricted range of sedentary work (Tr. 97).

As indicated, the law judge explained that he did not fully accept the plaintiff's testimony of debilitating pain and limitations because they are not supported by the clinical or objective medical findings, and the record does not contain any opinion from a treating or examining physician indicating that she has greater limitations than he determined in the residual functional capacity (Tr. 96-97). Notably, when asked to complete disability

papers, one of the plaintiff's former treating physicians, Dr. B. Weitzner,
declined to do so, stating that he "cannot honestly say [she] can't work"
because there is no objective evidence of disease (Tr. 584-85). Significantly,
the plaintiff does not assert any distinct challenge to the law judge's
credibility determination and, therefore, any such contention is deemed
waived in light of the scheduling Order which provided that "[t]he Plaintiff
must identify with particularity the discrete grounds upon which the
administrative decision is being challenged," with " citations to the record of
the pertinent facts and by citations of the governing legal standards" (Doc. 10,
p. 2).

For these reasons, the plaintiff's challenge to the law judge's
finding regarding fine manipulation is not meritorious. Consequently, the
corresponding contention that the plaintiff, due to a limitation in fine
manipulation, could not perform the jobs of cashier and assembler also fails.[4]

Furthermore, even if the plaintiff had been able to show that she
could not perform the jobs of cashier and assembler due to limitations in fine

---

[4]The vocational expert agreed that the plaintiff could not perform her past work as
a cashier to the extent that it required her to stand six hours in an eight-hour workday (Tr.
56). He added, however, that there are some cashier jobs at the sedentary level that permit
sitting and standing (id.).

-18-

manipulation, her challenge to the law judge's decision would still not succeed because the law judge also found that the plaintiff could perform the job of information clerk/surveillance monitor (Tr. 99). That job does not involve fine manipulation (Tr. 61).

The plaintiff challenges the law judge's finding that she could perform the job of information clerk/surveillance monitor. a composite job that involves camera surveillance and answering questions from resort guests, and which is not listed in the Dictionary of Occupational Titles ("DOT") (Doc. 15, pp. 26-28). The plaintiff argues that the composite job identified by the vocational expert is more analogous to an information clerk, DOT 237.367-022, which the DOT indicates is a semi-skilled position for which the plaintiff is not qualified because she is limited to unskilled jobs (id., pp. 27-28). The law judge, however, was entitled to rely upon the vocational expert's testimony even if his testimony conflicted with the DOT. Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), cert. denied, 529 U.S. 1089 (2000).

The expert explained that hotels and resorts are combining the jobs of information clerk and surveillance monitor (Tr. 61-62). Thus, the employee would be looking at the surveillance, but if they are asked a

-19-

question, such as "how do I get from here to here," they can answer the question (Tr. 62). While the combined job is not listed in the DOT, the expert can testify to it based on his experience and expertise. The Eleventh Circuit stated in Jones v. Apfel, supra, 190 F.3d at 1230:

> As noted in the DOT, the ALJ should supplement
> the DOT data with local information detailing jobs
> in the regional community. The VE provides this
> vital information.

Accordingly, the law judge may rely solely on the expert's testimony. Id.

In this case, the expert was present at the hearing and heard the plaintiff testify to her educational level. The law judge asked the expert whether there were jobs that the plaintiff could perform given her age, education, and residual functional capacity (see Tr. 55-56). The expert testified that the plaintiff could perform the job of surveillance monitor/information clerk. This testimony provided substantial evidence supporting the law judge's finding that the plaintiff was capable of carrying out that job.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision. which is supported by substantial evidence and does not contain any reversible error, is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 20th day of December, 2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE